# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0368V

|  |  |
|---|---|
| THOMAS WELSH,<br><br>      Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: December 4, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Crystal Fialkowski, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On January 8, 2021, Thomas Welsh filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on November 23, 2020. Amended Petition at 1, ¶¶ 1, 10. He also alleges that, as

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On September 28, 2022, Petitioner filed an amended petition, providing additional detail and medical records citation. ECF No. 21.

of the amended petition's filing date (September 28, 2022), he "continues to suffer sequelae as a result of SIRVA." *Id.* at ¶ 9.

For the reasons set forth below, I find Petitioner has satisfied the statutory six-month severity requirement. *See* Section 11(c)(1)(D)(i).[4]

### I.  Relevant Procedural History

Most likely due to the then-proposed removal of SIRVA from the Vaccine Injury Table,[5] Mr. Welsh initially filed only a cursory petition in this case, lacking a detailed discussion of his injury or the accompanying affidavit and medical records required by the Vaccine Act. *See* Section 11(c). More than a year later, he filed the medical records and declaration[6] required under the Vaccine Act. Exs. 1-6, filed Apr. 11, 2022, ECF No. 14; *see* Section 11(c). On June 16, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 17.

On June 2, 2023, Respondent asserted[7] that "[P]etitioner may not be able to preponderantly satisfy the severity requirement, that he has 'suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine.'" Status Report at 1, ECF No. 25 (citing Section 11(c)(1)(D)(i)). To counter this assertion, Petitioner filed supporting declarations from his wife and work supervisor, a status report setting forth his argument, and a supplemental declaration related to severity.[8] Exs. 7-8, filed July 19, 2023, ECF No. 27; Status Report, filed July 19, 2023, ECF No. 28; Ex. 9, filed Sept. 12, 2023, ECF No. 30. The same day

---

[4] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[5] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

[6] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 6.

[7] The initial assertion was made after a cursory review by Respondent's counsel of the medical records filed in this case, while awaiting the HHS review. Status Report at 1, ECF No. 25.

[8] All three declarations were signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exs. 7-9.

2

as Petitioner's last filing, Respondent set forth his argument in a memorandum. Respondent's Argument on Severity, filed Sept. 12, 2023, ECF No. 29.

During a status conference held on November 14, 2024, the parties were informed of my intention to rule in favor of Petitioner regarding the severity issue, and encouraged to engage in settlement discussions. *See* Minute Entry, dated Nov. 15, 2024. Previously, Petitioner had been finalizing his demand. Status Report, filed June 23, 2023, ECF 26.

While completing my fact ruling, I discovered that Petitioner received a COVID vaccine on April 9, 2021, four and one-half months post-vaccination. Because the record lacked any evidence showing whether the COVID vaccine was administered in Petitioner's same left arm as the flu vaccine (an important factor which needed to be determined), I allowed Petitioner time to provide additional documentation related to situs. On June 3, 2025, Petitioner provide evidence showing he received the COVID vaccine in his opposing right arm. Exs. 10-12, ECF No. 31.

Two weeks later, Respondent filed a status report reiterating his belief that Petitioner has failed to provide sufficient evidence of six-month sequela, and his claim should therefore be dismissed. Status Report, filed June 18, 2025, ECF No. 33. Respondent also maintains there is evidence showing a Type II SLAP[9] tear and acromioclavicular joint osteoarthritis - unlikely to be vaccine-related. These conditions therefore constitute viable alternative causes for Petitioner's symptoms. Status Report at 1.

I have determined that a fact ruling regarding severity – an issue which the parties have briefed, may help resolve this case. If unable to reach an informal agreement thereafter, they will be allowed to provide additional evidence and argument addressing all requirements for entitlement.

### II. Issues

At issue is whether Petitioner continued to suffer the residual effects of the alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

### III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act

---

[9] SLAP stands for superior labrum anteroposterior. MEDICAL ABBREVIATIONS at 552 (16th ed. 2020).

Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

4

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Finding of Fact

I make the following severity finding after a complete review of the record, which includes all medical records, affidavits or declarations, and additional evidence filed. Specifically, I highlight the following:

- Prior to vaccination, Petitioner suffered from chronic lower back pain with right-sided sciatica, diabetes, high blood pressure, and high cholesterol. Ex. 2 at 11, 44-45. In 2004, he underwent spinal surgery affixing a plate from the C5 to C7 vertebrae. *Id.* at 11. He also developed a thyroid nodule in late 2018. *Id.* at 11, 14, 44-45.

- On November 23, 2020, Petitioner received the flu vaccine, administered intramuscularly in his left deltoid, at a primary care provider ("PCP") appointment. Ex. 1. He was 52 years old at the time of vaccination. *Id.*

- On December 2, 2020, Petitioner called his PCP "to report that his left arm is still very sore after his flu shot on 11/23/20." Ex. 2 at 64. Noting that he had no redness or swelling, he described "a sharp, shooting pain whenever he tries to use that muscle." *Id.* Petitioner was instructed to visit the clinic for a physical exam. *Id.* at 65.

- On December 14, 2020, Petitioner was seen by his PCP for "pain with movement [that] started the day after [the] flu shot." Ex. 2 at 66. The PCP diagnosed Petitioner with acute left shoulder pain and provided him with an

- orthopedic referral for a possible steroid injection and stretching exercises. *Id.* at 66-67.

- On December 17, 2020, Petitioner attended his first orthopedic visit, reporting left shoulder pain that "started after he received his flu shot on November 23." Ex. 4 at 22. Stating that he "ha[d] never had previous left shoulder pain," Petitioner estimated its severity as "low at rest [and] up to 9 out of 10 with usage." *Id.*

- Upon examination, the orthopedist observed full range of motion ("ROM") but "a slightly painful flexion arc, . . . [n]o acromioclavicular joint tenderness, [m]oderate bicipital groove tenderness," and markedly positive impingement signs. Ex. 4 at 25. After x-rays taken that day revealed "no evidence of glenohumeral or AC arthrosis" (*id.* at 24; *accord.* Ex. 3 at 4), the orthopedist ordered an MRI (Ex. 4 at 25). He added that he expected Petitioner's "current symptoms related to [the] flu shot will resolve over time, but it would be hard to predict when full resolution would recur." *Id.*

- On January 4, 2021, Petitioner underwent an MRI which revealed "features of acute adhesive capsulitis, . . . [a] Type II SLAP tear from roughly 2-10 o'clock with small para labral cyst, . . . [m]ild AC joint osteoarthritis and infraspinatus tendinopathy." Ex. 3 at 6.

- The next day (January 5, 2020), the orthopedist called Petitioner to discuss the MRI results, which he characterized as "pretty clean." Ex. 4 at 18. Noting that Petitioner's "motion was good" when seen in the clinic, the orthopedist "recommended [a] 2 week course of anti-inflammatory, some PT with mild stretching and RTC program." *Id.* Expressing his belief that Petitioner should not require surgery, he stated that he "would offer a subacromial injection," [theorizing] that is probably the least of what [Petitioner] would consider." *Id.*

- Petitioner attended his first PT session on January 12, 2021, for "left shoulder pain and stiffness after receiving the flu vaccine." Ex. 5 at 79. Exhibiting limitations in his range of motion ("ROM"), he rated his pain as ranging from four to eight. *Id.* at 82-83.

- Over the subsequent six weeks (through February 23, 2021), Petitioner attended five more PT sessions. Ex. 5 at 27-77. By his third session on February 11, 2021, his pain had decreased significantly, ranging from no pain to a level of three. *Id.* at 53.

- At his sixth PT session on February 23, 2021, Petitioner exhibited close to full ROM and reported pain at level from one to two. Ex. 5 at 29. Under assessment, the physical therapist noted that Petitioner "[wa]s requesting to continue for at least one more visit secondary to the goo [sic] stretch he gains with PT and the ROM improvements he appreciates immediately after." *Id.* at 31. He added that Petitioner "acknowledge[d] progress towards goals, but he does not yet feel as though he is back to normal." *Id.* For the plan going forward, the physical therapist stated that Petitioner "will work independently x 2 weeks, then will f/u with PT." *Id.* There is a notation in this record, however, that Petitioner was being discharged because the "[a]nticipated goals and expected outcomes ha[d] been achieved and [Petitioner] decline[d] to continue care." *Id.* at 28.

- Over three months later, on June 2, 2021, Petitioner returned to PT for one additional session. Ex. 5 at 9-26. He reported that he "was feeling better [but] [w]hile getting back into golfing a few weeks ago, he start[ed] having some pain again in L [s]houlder with swinging." *Id.* at 12. Estimating severity between no pain to one (*id.* at 13). Petitioner stated that he "wants to decrease pain, improve his strength more, and make more progress since his last round of PT" (*id.* at 12).

- In his supplemental declaration, executed August 30, 2023, Petitioner recounted "pain in [his] left shoulder that started the day before Thanksgiving, which was 2 days after [he] received the shot." Ex. 9 at ¶ 2. Stating that his pain "continued throughout the winter of 2020," he described difficulties working, sleeping, and caring for himself. *Id.* at ¶ 3. Petitioner added that his pain continued into spring and summer 2021, causing his wife to perform activities involving lifting both arms such as shoveling snow and cutting grass. *Id.* at ¶ 4. He reported experiencing severe pain in mid-May 2021 when attempting to play golf with his boss. *Id.* at ¶ 5.

- In her declaration, executed on July 10, 2023, Petitioner's wife recited the same account of Petitioner's pain onset as occurring two days after vaccination while on a trip. Ex. 7 at ¶ 2. Stating that Petitioner "continued to do exercises that the physical therapist gave him to do after being discharged" (*id.* at ¶ 3), she recalled that Petitioner was unable to shovel snow during the winter or help her plant her vegetable garden in May 2021 as usual (*id.* at ¶¶ 4-5).

7

- In his declaration, also executed on July 10, 2023, Petitioner's former boss recalled Petitioner expressing uncertainty regarding "how his shoulder would do as he ha[d]n't tried to go golf since before his shoulder injury the previous Fall." Ex. 8 at ¶ 1. When Petitioner experienced immediate pain after teeing off, his former boss recounted him saying "that he guesse[d] that it [wa]s not healed 100% yet." *Id.* at ¶ 2.

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that he suffered symptoms of his alleged SIRVA beyond May 25, 2020 (assuming a pain onset two days post-vaccination - as Petitioner alleges, and the record supports). Although a close call,[10] and one made cognizant of the fact that not all of Petitioner's symptoms may ultimately be deemed to be vaccine-related, the above medical entries and sworn declarations preponderantly suggest Petitioner suffered from pain, primarily with movement, through at least *June 2021* – thus establishing severity.

The record in this case establishes that although Petitioner obtained significant improvement after only two PT sessions – reporting much lower pain levels by his third session in February 2021 (Ex. 5 at 53) - he continued to experience mild pain and limitations in ROM. At his sixth PT session in late February 2023, Petitioner remained symptomatic. *Id.* at 29. And he expressed a desire for at least one more PT session,[11] noting that he did not feel that he had gotten back to normal. *Id.* at 12.

Furthermore, when returning for additional PT in early June 2021, Petitioner reported that he was feeling *better* prior to his mid-May 2021 golf outing. Ex. 5 at 12. But he did not state that all his symptoms had resolved. And Petitioner has provided sworn declarations from his wife and former supervisor which support his claims of ongoing difficulties. For example, the statement from his former supervisor recounting that Petitioner voiced a concern regarding his ability to play golf supports the notion that he had some ongoing, albeit not significant, sequela. *See* Ex. 8 at ¶ 1.

---

[10] In creating the Vaccine Program, Congress envisioned a system "in which close calls regarding causation are resolved in favor of injured claimants." *Althen v. Sec'y of Health & Hum. Servs.,* 418 F.3d 1274, 1280 (Fed. Cir. 2005); *accord. Kane v. Sec'y of Health & Hum. Servs.*, No. 21-0516V, 2023 WL 2885340, at *5 (Fed. Cl. Spec. Mstr. Mar. 7, 2023) (applying "close call" considerations when determining severity).

[11] The entry stating that Petitioner requested to be discharged from PT is likely a mistake. Located in the section addressing whether the PT goals had been met (*see* Ex. 5 at 28), it may be that the therapist neglected to remove that information or added it reflectively, without much thought. In contrast, the notation stating that Petitioner requested an additional PT session contains more detail specific to Petitioner. *See id.* at 31. And it is located in a section containing more details specific to Petitioner, when the therapist is providing Petitioner's assessment. *Compare id.* at 28 *with id.* at 31.

Admittedly, there is some evidence that Petitioner may have experienced a complete resolution of his symptoms prior to the mid-May golf outing. When returning for PT in June 2021, he reported that he *started* to have some pain again while playing golf. Ex. 5 at 12. And his uncertainty regarding his golfing abilities *could* be attributed to the complete absence of symptoms at some point prior to the golf outing. But it is unlikely that he would have voiced this concern had he experienced a complete absence of sequelae.

Even if Petitioner had a period of pain relief at some point prior to mid-May, this fact does not prevent Petitioner from establishing the needed severity. While attending PT in January and February 2021, Petitioner also reported some occasions when he experienced no pain. *See,* e.g., Ex. 5 at 53 (reporting pain ranging from none to three in late February 2021). To satisfy the severity requirement, Petitioner need only show some ongoing sequela – it may be intermittent and/or mild, and need not be pain specifically. *Law v. Sec'y of Health & Hum. Servs.,* No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (noting that the Vaccine Act "does not demand that the effects or complications be notably 'severe' on their own, or that the symptoms and treatment continue uninterrupted throughout the six-month period"). Thus, even the mild and intermittent pain, and limited ROM, experienced by Petitioner will suffice.

Although the circumstances of this case suggest a pain and suffering award substantially lower than in most SIRVA cases, it does *not* mean I cannot find the basic requirement of six months severity met. Accordingly, there is preponderant evidence to establish Petitioner suffered the residual effects of her alleged SIRVA for more than six months.

**Scheduling Order**

Despite my finding related to severity, the question of entitlement remains. And there is evidence showing that at least some of Petitioner's symptoms may not be vaccine-related. Any later determination related to causation will undoubtedly affect the severity requirement as well. Thus, I would encourage the parties to engage in settlement discussions in an attempt to informally resolve this case. When doing so, Petitioner should be mindful of the mild pain levels reflected in the PT records from early February through June 2021, and Respondent should simultaneously finalize his Rule 4(c) Report.

**Petitioner shall file any updated medical records he has obtained and a status report providing information regarding any updated medical records still outstanding and any discussions related to compensation by no later than**

**Tuesday, January 06, 2026**. In the status report, he should confirm that he has provided a demand and supporting documentation to Respondent and state whether Respondent has provided a response.

**Unless the parties have reached an informal settlement, Respondent shall file his Rule 4(c) Report by no later than Monday, February 09, 2026**.

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master